This is an appeal by State Farm Mutual Automobile Insurance Company ("State Farm") from an order of the Etowah Circuit Court rescinding the release executed in its favor by its insureds, Carolyn Brackett and M. L. Brackett, the appellees.
On January 4, 1984, the vehicle being driven by M.L. Brackett, and in which Carolyn Brackett was a passenger, collided with the vehicle being driven by Juanita Johnson, an uninsured motorist. Both M.L. and Carolyn Brackett were injured in the accident: M.L. bruised his shoulder and injured his neck, and Carolyn bumped her head and injured her left thumb. Both were treated at a hospital and released the night of the accident, but they were referred to the Gadsden Orthopaedic Clinic for followup examination and treatment.
The Bracketts reported the accident to their State Farm agent the day following the accident, whereupon State Farm referred the file to its local claims adjuster, James Griggs. Griggs contacted the Bracketts on January 9, 1984, and requested that they furnish him with their medical expenses and information concerning Carolyn Brackett's lost wages. The next day, January 10, Juanita Johnson filed suit against M.L. Brackett, seeking damages arising out of the collision. Thereafter, Griggs met with Juanita Johnson and her attorney, and a settlement was eventually reached between State Farm and Johnson, whereby she agreed to dismiss her suit against M.L. Brackett in return for a special release in which State Farm agreed not to pursue a subrogation claim against Ms. Johnson for the uninsured motorist payments it would be making to the Bracketts, its insureds.
Griggs informed the Bracketts of this settlement with Ms. Johnson, and he requested that they submit a demand for payment under the uninsured motorist provision of their policy. In the meantime, the Bracketts were both seen by physicians at the Gadsden Orthopaedic Clinic. M.L. Brackett was seen by a Dr. Haller, who examined and released him without further treatment. Carolyn Brackett was seen by Dr. Jack Reagan, who examined her on January 12, 1984, and found a suspected fracture of the first metacarpal in her left hand. She was seen by Dr. Reagan again on January 17, and, after concluding that there was not actually a fracture, Dr. Reagan dismissed her from his care with instructions that she could return to work in three or four days. *Page 1250 
On February 17, 1984, the Bracketts submitted to Griggs their demand for payment in the total amount of $3,767.00, itemized as follows:
 M.L. Brackett Carolyn Brackett $ 80.00 Hospital $ 83.00 Hospital 25.00 Dr. Haller 44.00 Dr. Reagan 1,000.00 Suffering 535.00 Lost Wages 2,000.00 Suffering --------- --------- $1,105.00 $2,662.00
Griggs met with the Bracketts on February 22, 1984, to discuss this demand. Griggs informed the Bracketts that State Farm agreed to pay only $2,000 on Carolyn's claim and $500 on M.L.'s claim. The Bracketts agreed to these amounts, and each executed the following release:
 "For the Sole Consideration of two thousand five hundred and no/100 Dollars, the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby releases and forever discharges Juanita Johnson and State Farm Mutual Automobile Insurance Company, their heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 14[th] day of January, 1984, at or near Gadsden, Etowah County, Alabama.
 "This release expressly reserves all rights of the parties released to pursue their legal remedies, if any, against the undersigned, their heirs, executors, agents and assigns.
 "Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.
 "Undersigned hereby accepts draft or drafts as final payment of the consideration set forth above. In Witness Whereof, we have hereunto set our hand(s) and seal(s) this 22[nd] day of Feb., 1984.
"/s/ Mary Carolyn Brackett
"/s/ M.L. Brackett"
(Emphasis added.)
Following the execution of this release, Carolyn Brackett continued to experience pain in her hand. In March 1984, she was examined by Dr. Ronald Neimkin, a hand specialist at the UAB Hospital Division of Orthopedic Surgery/Hand Surgery. Dr. Neimkin treated her conservatively for several months by placing her hand in a splint. However, her pain continued, and, in August 1984, an arthrogram revealed a ligament tear of the carpal metacarpal joint. In September 1984, Dr. Neimkin performed surgery on Mrs. Brackett's hand to repair the torn ligament.
On January 2, 1985, the Bracketts filed suit, seeking among other things to rescind the release they had signed February 22, 1984, naming State Farm, among others, as defendant. The Bracketts alleged that the release is due to be rescinded because it "was executed under a mutual mistake of fact, and further was induced by certain misrepresentations." State Farm filed a motion for a more definite statement, contending that the Bracketts' claim alleging fraud and mistake did not state with particularity the circumstances constituting fraud and mistake, as required by Rule 9(b), A.R.Civ.P. The trial court entered an order granting State Farm's motion for a more definite statement, and directing the Bracketts "to amend and furnish a more definite statement of their claims." However, the record before this Court does not contain an amendment by the Bracketts made pursuant to this order by the trial court.
A non-jury trial was held on October 29, 1986, only as to the Bracketts' claim for *Page 1251 
rescission of the release. On December 11, 1986, the trial court entered its order, finding "that the release in question was executed under a mutual mistake of fact, and that it is equitable that this release be held rescinded." Thereafter, co-defendants Juanita Johnson and Life Casualty Company filed a post-judgment motion to alter, amend, or vacate the judgment, or, in the alternative, for a new trial; State Farm filed a similar motion. The trial court entered an amended order in which it concluded "that there was no mutual mistake of fact, fraud or contract between the plaintiffs and the defendants, Juanita Cobb Johnson and Life Casualty Insurance Company, on which to rescind the release." The trial court, therefore, granted the post-judgment motion of Juanita Johnson and Life 
Casualty Company and ordered that the release was valid and not rescinded or set aside as to them, "and that all claims in the subject case against [them] are dismissed." However, the trial court denied State Farm's post-judgment motion and upheld its prior order rescinding and setting aside the release as to State Farm. This appeal by State Farm followed.
State Farm argues that the trial court erred in rescinding the release in question on the ground of mutual mistake, because, it argues, the release is unambiguous andexpressly covers the claim for damages the Bracketts now seek on account of an injury that was unknown to any of the parties at the time the release was executed. We agree.
In Boles v. Blackstock, 484 So.2d 1077 (Ala. 1986), this Court was called upon to construe a release containing the same language as that in the present case. In Boles, the plaintiffs sought to rescind the release also on the grounds of mutual mistake, but the alleged mistake in Boles concerned the parties' understanding, based on a doctor's prognosis, as to the length of time it would take the plaintiff to "be back to normal," i.e., to fully recover. This Court quoted with approval the rule announced in Miles v. Barrett, 223 Ala. 293,134 So. 661 (1931), and concluded that the release in question was clear and unambiguous in its release of the claims in question, and, therefore, that parol evidence was inadmissible to vary its terms:
 "In Miles v. Barrett, 223 Ala. 293, 134 So. 661
(1931), a case quite similar to the present case, the Court affirmed a verdict in favor of the defendants where the plaintiffs sought to avoid a release on the grounds of mutual mistake. In so holding, the Court explained:
 " '[I]t appeared without dispute that the plaintiff, in consideration of defendant paying his doctors' and hospital bills, amounting to less than $100, executed a written release "in full and complete settlement of any and all claims of the undersigned (plaintiff) against the said T.L. Barrett (defendant) on account of such injuries." [Emphasis added in Miles.]
" '. . . .
 " 'Giving to the release what, in [its] opinion, was its legal effect, the trial court directed a verdict for the defendant by giving the affirmative charge at his request in writing, resulting in verdict and judgment in his favor.
 " 'The contention here is that there was evidence before the jury tending to show that the plaintiff in executing the release, and the defendant in accepting it, were laboring under mutual mistake of fact, in that both parties acted on the assumption that plaintiff had only suffered a trivial injury to his face, which would not disfigure him, but as a matter of fact one of his cheek bones was crushed, leaving a deep depression on one side of his face, necessitating further surgical treatment.
[Emphasis added in Boles.]
 " 'There are numerous decisions that sustain appellant's contention that a release given and accepted under mutual mistake of fact, in such cases, as to the nature and extent of the injury, may be avoided, although the execution thereof was not superinduced by fraud, and it may be conceded that the numerical weight of the decisions sustains this view. See St. Louis-San Francisco Ry. Co. v. Cauthen, *Page 1252 112 Okla. 256, 241 P. 188, 48 A.L.R. 1447, and extensive note, 1462.
 " 'But the rule of our decisions is that, in the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties to be judged by the court from what appears within the four corners of the instrument itself, and parol evidence is not admissible to impeach it or vary its terms. Barbour v. Poncelor, 203 Ala. 386, 83 So. 130; Wright v. McCord, 205 Ala. 122, 88 So. 150; Gravlee v. Lamkin, 120 Ala. 210, 24 So. 756. [Emphasis added in Boles.]
 " 'This rule is sustained by a wealth of authority, and by sound reason. See note, 48 A.L.R. pp. 1464-1470.' 223 Ala. at 293, 134 So. at 661-62.
 "The language of the release in question is also clear and unambiguous in its inclusion of 'all injuries, known and unknown,' and in characterizing the release as 'a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.' For that reason, parol evidence, in the form of affidavits or otherwise, to 'explain' the parties' reliance on the prognosis of Earl Boles's doctor, would be inadmissible to vary the terms of the release or avoid it in its entirety. See Finley v. Liberty Mutual Ins. Co., 456 So.2d 1065 (Ala. 1984); Cohorst v. United States Steel Corp., 439 So.2d 23 (Ala. 1983); Jehle-Slauson Construction Co. v. Hood-Rich Architects Consulting Engineers, 435 So.2d 716 (Ala. 1983); Conley v. Harry J. Whelchel Co., 410 So.2d 14 (Ala. 1982)." (Emphasis added in Boles.)
484 So.2d at 1080-81.
The Bracketts argue that the case of Louisville N. R.R. v.Solchenberger, 270 Ala. 536, 120 So.2d 704 (1960), is controlling on these facts, because the mistake here concerned a diagnosis, rather than a prognosis, which was in issue inBoles, supra. In Boles, this Court quoted from Solchenberger,supra, the portion of that decision that recognized the distinction between diagnosis and prognosis; however, we further quoted from Solchenberger where the Court expressly distinguished Miles v. Barrett, supra, implicitly recognizing that, because Solchenberger involved an action to compelexecution of a release, parol evidence was admissible:
 "In Louisville Nashville Railroad Co. v. Solchenberger, 270 Ala. 536, 544-45, 120 So.2d 704, 711 (1960), this Court drew the distinction between that case, where the mistake was as to the plaintiff's condition at the time of the execution of the release, and the situations such as in present case, where the mistake was as to plaintiff's future condition:
 " 'Defendant agues that if there was a mistake as to plaintiff's physical condition, the mistake was as to a future event and not as to a past or present fact, and, therefore, such mistake would not excuse performance of the agreement. We are cited to Spangler v. Kartzmark, 121 N.J. Eq. 64, 187 A. 770; Pahl v. Tri-City Ry. Co., 190 Iowa 1364, 181 N.W. 670; and Metropolitan Life Ins. Co. v. Humphrey, 167 Tenn. 421, 70 S.W.2d 361; where mistakes in prognosis are distinguished from mistakes in diagnosis. In those cases the courts applied the rule that equity will not release a party from the consequences of voluntary compromises or speculative contracts made with knowledge of the facts and which turn out differently from what was expected. 70 S.W.2d 362. In the case at bar, the mistake was not as to a future event, such as whether or not plaintiff would recover in the future. The mistake was as to an existing fact, that is, plaintiff's physical qualification to return to work at the time the agreement was made.' [Emphasis added in Boles.]
 "As we point out in footnote 1, the Court in Solchenberger, supra, goes on to distinguish *Page 1253 
that case from Miles v. Barrett, supra:
 " 'Defendant cites also Miles v. Barrett, 223 Ala. 293, 134 So. 661, where in [an] action at law for personal injury, this court held defendant entitled to [the] affirmative charge because plaintiff had executed [a] release, and that parol evidence could not be received to impeach the release or contradict it. Miles v. Barrett was an action at law. Here relief is sought in equity. There the release had been executed. Here defendant seeks to compel execution and the rules to be applied are those obtaining in equity when specific performance is the relief prayed for.' 270 Ala. at 545, 120 So.2d at 712." (Emphasis added in Boles.)
484 So.2d at 1082-83. The Court in Solchenberger set out the above mentioned rules as follows:
 " '* * * The proceeding to avoid the execution sale, and have the judgment satisfied, is tantamount to a proceeding for the specific execution of the contract of settlement, and rests on the same principles as if the agreement to compromise the debt were executory. The specific performance of a contract will not be decreed, when it is founded [on] the mistake of one of the parties as to the existence of material facts of which the party seeking performance is informed, and did not disclose; . . .' Campbell v. Durham, 86 Ala. 299, 300, 5 So. 507."
270 Ala. at 545-46, 120 So.2d at 712.
Thus, the critical distinction between theSolchenberger case and Miles, Boles, and the present case is that in all of the latter cases, the plaintiffs had executedwritten releases, the terms of which were clear and unambiguous, and thus could not be varied by parol evidence, whereas in Solchenberger, the purported release had not been executed prior to the injured party's discovery of the mistake. In that case, suit had been brought by L N seeking specific performance of the injured party's agreement to execute the release. Therefore, because the written release had not been executed, the parol evidence rule had no field of operation inSolchenberger.
Because the release in this case clearly and unambiguously releases State Farm "from any and all claims . . . [for] all injuries, known and unknown, both to person and property, which have resulted or may in the future develop," the judgment rescinding the release against State Farm is due to be, and it is hereby, reversed and the cause remanded for an order consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.