The plaintiff, Max Allen Cleghorn, appeals from a summary judgment for the defendants, Georgia Bankston Scribner and State Farm Mutual Automobile Insurance Company ("State Farm"), in this action to rescind a release and to recover damages for negligence and fraud. We affirm.
The undisputed material facts in this case are as follows: Cleghorn, an employee of the State Highway Department, was injured when the tractor on which he was riding was struck by an automobile being driven by Scribner. After discussing the accident and the nature of his injuries with representatives of State Farm, Scribner's liability insurance carrier, Cleghorn accepted $5,000 in settlement of his claim against Scribner and signed a release that stated, in pertinent part, as follows:
 "[Cleghorn] hereby releases and forever discharges [Scribner] from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from [the] accident. . . . [Cleghorn] hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."
At the time he signed the release, Cleghorn believed that he had substantially recovered from his injuries. Cleghorn negotiated the settlement agreement without the advice of an attorney; however, State Farm's representatives did not discourage him from seeking legal advice. After his physical condition worsened, Cleghorn filed this action, seeking to rescind the release and to recover damages for negligence on the part of Scribner in the operation of her automobile and fraud on the part of State Farm in negotiating the settlement agreement. The trial court entered a summary judgment for Scribner and State Farm, holding that the release was valid and enforceable.
Cleghorn contends that the summary judgment was improper because, he argues, jury questions were presented 1) as to whether State Farm's representatives fraudulently induced him to sign the release; 2) as to whether there was a valuable consideration for the release; and 3) as to whether the settlement agreement was reached and the release signed under a mutual mistake of fact — that Cleghorn had substantially recovered from his injuries.
Cleghorn's first argument is that there was evidence tending to show that one of State Farm's representatives misrepresented to him that if his physical condition worsened and his future medical bills were not paid by Blue Cross and Blue Shield of Alabama, the administrator of his state health care insurance plan, then State Farm might "possibly" consider paying those future medical bills. This claim, being based on allegations that State Farm *Page 695 
failed to fulfill a promise to perform a future act, constituted a claim of promissory fraud. However, the judgment states that "during oral argument, counsel for . . . Cleghorn [withdrew] any claim of promissory fraud with regard to the procurement of the release." Therefore, Cleghorn's argument in this regard is not properly before this Court.
Cleghorn's complaint reveals that his fraud claim was actually based on allegations that State Farm's representatives were under a legal duty to inform him that the State might make a subrogation claim, pursuant to the Highway Department's workmen's compensation program, to part or all of the $5,000 that he received pursuant to the settlement, and that they failed to do so. Cleghorn argues that had he known that he might have to reimburse the State for the workmen's compensation payments made to him he would have sought a more substantial settlement from State Farm. Cleghorn also based his fraud claim on allegations that the release was obtained from him while he was in a "weak condition financially" and without an attorney, and that it was obtained for a sum "grossly less than would be a fair and just compensation."
An obligation to communicate is one of the requisite elements of fraudulent concealment. See Ala. Code 1975, § 6-5-102. The record contains an unexecuted copy of a "Subrogation Agreement and Election to be Covered by the Highway Department Compensation Program," by which employees of the Department agreed to receive payment of compensation under the self-insurance program provided by the Department (see Ala. Code 1975, § 23-1-41), and to reimburse the Department from any settlement with a third-party tort-feasor. We cannot clearly ascertain from the record whether Cleghorn signed one of these agreements, although, judging by his affidavit submitted in opposition to the motion for summary judgment, we assume that he did. State Farm was not Cleghorn's insurance carrier, and the record shows that the settlement agreement between Cleghorn and State Farm was negotiated at arm's length. Although Cleghorn was not represented by an attorney during the settlement discussions, he had every opportunity to seek legal advice; no one at State Farm discouraged Cleghorn from seeking the advice of an attorney. Under the circumstances of this case, the representatives of State Farm were under no legal obligation to inform Cleghorn of the State's subrogation interest (assuming that they were aware of that interest). SeeTrio Broadcasters, Inc. v. Ward, 495 So.2d 621 (Ala. 1986), for a general discussion of the factors applicable in construing the "particular circumstances" language contained in § 6-5-102. See, also, Henson v. Estes Health Care Center, Inc.,439 So.2d 74, 76 (Ala. 1983), a workmen's compensation case, where the plaintiff alleged that her employer and its workmen's compensation insurance carrier were under a legal duty to disclose to her during settlement negotiations that she had a potential claim for her loss of earning capacity under two sections of the Workmen's Compensation Act that were not discussed during the settlement negotiations. The plaintiff was not represented by an attorney during the settlement negotiations. This Court, affirming the judgment for the defendants, held that there was no duty on the part of the defendants to disclose laws that were accessible to and presumed to be known by all, including the plaintiff.[1]
Furthermore, Cleghorn's reliance on Louisville NashvilleR.R. v. Huffstutler, 162 Ala. 619, 50 So. 146 (1909), andTaylor v. Dorough, 547 So.2d 536 (Ala. 1989), for the proposition that a jury question was presented as to his fraud claim is misplaced. In both of those cases, there was evidence of fraudulent misconduct on the part of the defendants, which was considered in conjunction with the plaintiffs' weak mental, physical, or financial condition; the fact that the plaintiffs did not *Page 696 
have legal counsel; and evidence that the settlements were grossly unfair. All that evidence together required submission of the plaintiffs' fraud claims to the trier of fact. The record in the present case does not create a reasonable inference that at the time he signed the release Cleghorn was in such a "weak condition," mentally or physically, that he did not understand or appreciate the terms of the settlement. Neither does the record show that Cleghorn was discouraged or somehow prevented from seeking legal advice. Although Cleghorn testified that he was having serious financial difficulties at the time he signed the release and that he has incurred $83,500 in lost wages as a result of the accident, it cannot be reasonably inferred from this evidence alone, in the absence of some evidence of a misrepresentation or a concealment of a material fact on the part of State Farm's representatives, that Cleghorn was fraudulently induced to sign the release. The summary judgment was proper as to State Farm. Rule 56, Ala.R.Civ.P.
With respect to Cleghorn's argument that the release was due to be set aside on the basis of a lack of consideration or on the basis that it was executed under a mutual mistake of fact (i.e., a mistaken belief that Cleghorn had substantially recovered from his injuries), the trial court could properly have based its judgment on the fact that the release was supported by a valuable consideration and was unambiguous in its release of Scribner from all liability to Cleghorn. Cleghorn received $5,000 in exchange for signing the release. It is well settled that the consideration need not be adequate in the sense of equality of value to support the release. SeeGrimes v. Liberty National Life Ins. Co., 514 So.2d 965 (Ala. 1987); see, also, 66 Am.Jur.2d Release § 11 (1973).[2]
Furthermore, in Boles v. Blackstock, 484 So.2d 1077 (Ala. 1986), this Court reaffirmed the rule stated in Miles v.Barrett, 223 Ala. 293, 134 So. 661 (1931), to the effect that, in the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties from what appears within the four corners of the instrument itself, and parol evidence may not be introduced to establish the existence of a mutual mistake of fact when the release was signed as a basis for a rescission of that release.[3] See, also, State Farm MutualAutomobile Ins. Co. v. Brackett, 527 So.2d 1249 (Ala. 1988). Thus, because voluntary settlements are favored, if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge or means of obtaining knowledge concerning the circumstances involving those rights (e.g., with respect to the extent of personal injuries suffered), and there is no fraud or other misleading incident, a compromise *Page 697 
into which they have voluntarily entered must be enforced, although the disposition made by the parties in their agreement may not be that which the court or a jury would have made had the controversy been litigated. See 66 Am.Jur.2dRelease § 32 (1973). Thus, because the release signed by Cleghorn was valid and enforceable, the summary judgment was also proper as to Scribner. Rule 56, supra.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, STEAGALL and INGRAM, JJ., concur.
KENNEDY, J., dissents.
[1] We also note that the record indicates that the State has not made a claim with respect to any part of the $5,000 received by Cleghorn.
[2] The fact that the State has a subrogation interest in the $5,000 received by Cleghorn does not, as Cleghorn contends, require the rescission of the release on the basis of a lack of consideration. The $5,000 paid to Cleghorn was a valuable consideration; the fact that Cleghorn may be under a legal obligation to reimburse the State from that amount for the compensation payments that he received in no way alters the fact that Cleghorn bargained for and received the $5,000 as settlement of his claim against Scribner. As previously noted, the record indicates that the State has not made a claim with respect to any part of the $5,000 received by Cleghorn.
[3] We note that, even assuming, as our standard of review requires, that one of State Farm's representatives told Cleghorn that State Farm might "possibly" consider paying his future medical bills that were not paid by Blue Cross (the record indicates that there are no outstanding medical bills), this did not create an ambiguity with respect to the release signed by Cleghorn. Black's Law Dictionary 1166 (6th ed. 1990), defines "possible" as follows:
 "Capable of existing, happening, being, becoming or coming to pass; feasible, not contrary to nature of things; neither necessitated nor precluded; free to happen or not; contrasted with impossible. In another sense, the word denotes improbability, without excluding the idea of feasibility. It is also sometimes equivalent to 'practicable' or 'reasonable' as in some cases where action is required to be taken 'as soon as possible.' "
"Possibility" is defined in Black's as "[a]n uncertain thing which may happen."
Thus, the evidence, viewed in the light most favorable to Cleghorn, shows that he released Scribner from all liability and that State Farm merely left open the possibility that it would consider renegotiating the settlement at a future date if Blue Cross refused to pay Cleghorn's medical bills.