On May 17, 1990, Christopher Hall was struck by an automobile driven by Richard Lamar Gaines. Gaines was employed by Quality Assurance Testing Laboratories, Inc. ("Quality"), at the time of the accident. Hall suffered a broken leg and, initially, spent one week in a hospital. His resulting medical bills and lost wages totaled $5,198.97. On June 7, 1990, three weeks after the accident, Michael Ownings, a claims adjuster employed by American States Insurance Company ("American"), the liability insurer for Quality and Gaines, went to Hall's home and negotiated a $10,000 settlement with Hall. Hall signed an agreement entitled "Full and Final Release," stating that Hall, "for the sole and only consideration of [$10,000], . . . released and discharged . . . [Quality and Gaines] . . . from any and all liability . . . on account of personal injuries . . . caused by or resulted or hereafter resulting to [Hall] from an accident which occurred on" May 17, 1990. Hall also accepted a check for $10,000 from Ownings on the same day. Thereafter, Hall's doctor determined that the leg was not healing properly. To repair the bone, the doctor operated on the leg and placed it in a cast for 10 months. Hall was unable to work during this period and, eventually, his employer dismissed him. Ultimately, Hall's medical bills exceeded $10,000.
On June 21, 1991, Hall sued Gaines and Quality, alleging that Gaines had negligently and wantonly operated the automobile and that his negligence had caused Hall's injury, and seeking to rescind the release and to recover damages to compensate for the expenses incurred after he signed the June 7, 1990, release. The defendants moved for a summary judgment, arguing that the release expressly protected them from any further liability to Hall and that it was not subject to rescission. The trial court entered a summary judgment for the defendants, and Hall appealed. We affirm.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988) (citing Chiniche v. Smith,374 So.2d 872 (Ala. 1979)); Rule 56(c) Ala.R.Civ.P. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant, resolving all reasonable doubts against the movant. Hanners v. BalfourGuthrie, Inc., 564 So.2d 412, 413 (Ala. 1990); Wilson v. Brown,496 So.2d 756, 758 (Ala. 1986); Harrell v. Reynolds Metals Co.,495 So.2d 1381, 1383 (Ala. 1986).
Hall argues that the release he signed is not valid, either because Ownings procured it by fraud or because the parties were mutually mistaken as to the facts underlying the release. In support of his arguments, Hall points out that he was 19 years old when he signed the release. Further, Hall states in his affidavit:
 "I was under medication at the time I signed the release, and I feel this medication affected my judgment.
". . . .
 "In addition . . ., my leg was still in a cast when Mr. Ownings came to the house. He explained to me that he knew several people who had been in casts before, and then he proceeded to explain what would happen to me in the future. He told me that I would go back to the doctor, the doctor would X-ray my leg, and the cast would be taken off. He further stated that I would have no problems with my leg in the future. I did not know any better and I believed him when he told me this. Also, I did not have a chance to talk to the doctor about my future prognosis because the release was *Page 372 
signed that day and everything happened so fast."
Hall also alleges that he has a learning disability and that he did not have anyone to advise him when he signed the release.
Ownings denies making statements as to whether Hall's doctor would remove the cast at Hall's next visit and as to whether Hall's leg would be all right. Ownings also points out that Hall's aunt, Viola Harris, was present when Hall signed the release and that she stated in her deposition that she believed Hall was capable, at the time, of making a decision as to whether to settle his case.
 I. FRAUD
Hall contends that the summary judgment was improper because, he says, there is a genuine dispute as to whether Ownings procured the release by fraud. A release induced by fraud is void. Taylor v. Dorough, 547 So.2d 536 (Ala. 1989). Fraud has four elements: (1) misrepresentation of a material fact; (2) made willfully to deceive or recklessly without knowledge; (3) which was justifiably relied upon by the plaintiff under the circumstances; and (4) which caused damage to the plaintiff as a proximate consequence. Ramsay Health Care, Inc. v. Follmer,560 So.2d 746, 749 (Ala. 1990) (citing Bowman v. McElrathPoultry Co., 468 So.2d 879, 880 (Ala. 1985)), quoted in Harrisv. M S Toyota, Inc., 575 So.2d 74, 76 (Ala. 1991).
This Court adopted the "justifiable reliance" standard inHickox v. Stover, 551 So.2d 259, 263 (Ala. 1989), to replace the "reasonable reliance" standard used prior to Hickox. Under the justifiable reliance standard:
 " 'A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth." ' "
Id. (quoting Southern States Ford, Inc. v. Proctor,541 So.2d 1081, 1091-92 (Ala. 1989) (Hornsby, C.J., concurring specially)).
The defendants argue that, even if Ownings made the misrepresentations alleged, a jury could not find that Hall justifiably relied on those misrepresentations. We agree. Hall stated in his deposition that he read the release before he signed it. Further, as to his state of mind when he signed it, Hall stated that he understood that Ownings was a claims adjuster and not a doctor, that he did not personally believe that there would be any further problems with his leg, and that he knew that he was releasing Quality and Gaines from any claim he might have against them. Therefore, we conclude that, even if Hall proved the alleged misrepresentations, he could not, as a matter of law, establish that he justifiably relied on Ownings's statements as to his medical prognosis.
 II. MUTUAL MISTAKE OF FACT
Alternatively, Hall contends that the summary judgment was improper because, he says, there is a genuine dispute as to whether Ownings and Hall were mutually mistaken as to the facts upon which the release was based. This Court held in Boles v.Blackstock, 484 So.2d 1077 (Ala. 1986), that "as a matter of law, reliance on a prediction as to future events will not support a claim for rescission of a release based on a claim of mutual mistake of fact." Id. at 1082, relying on Louisville Nashville R.R. v. Solchenberger, 270 Ala. 536, 544-45,120 So.2d 704, 711 (1960).
Ownings admitted in his deposition that he and Hall discussed the eventual removal of Hall's cast and that, had Ownings known when he made Hall the settlement offer that Hall would have to undergo surgery, he possibly would not have made the offer or would not have attempted to settle the case. However, even if Ownings did tell Hall that the doctor would remove the cast on the next visit and that Hall's leg would be all right, Hall presented no evidence that these statements constituted anything other than predictions as to future events. Accordingly, Hall's claim of a *Page 373 
mutual mistake will not support a rescission.
The summary judgment is due to be affirmed.
AFFIRMED.
MADDOX, ADAMS, STEAGALL and INGRAM, JJ., concur.
ALMON, J., concurs in the result.