The plaintiff, J.M. Cain, Jr., filed a complaint in the Circuit Court of Tuscaloosa County alleging, among other things, a breach of contract by the defendant, Charles L. Saunders, Jr. The dispute between the parties related to certain commercial transactions between them. Following the entry of a partial summary judgment in favor of Saunders, the parties, on January 24, 2000, mediated the remainder of the action and reached an agreement. The parties signed a two-page handwritten agreement that included an exchange of promises by the parties to execute and deliver to one another various legal instruments. For his part, Saunders agreed, among other things, to satisfy a mortgage on property owned by Cain and to convey to Cain other real and personal property owned by Saunders. The agreement also called for the preparation and the subsequent execution and delivery by each party of a written release of the other party.
The portion of the parties' settlement agreement herein at issue is as follows:
 "3. Mr. Saunders will transfer ownership of the two [MONY] policies (death benefit of $19,022 and $12,300) to Mr. Cain. Saunders waives and releases any claim to all policies identified in the August 14, 1991, document."
At the time the parties entered into their settlement agreement, both parties believed that the two life-insurance policies had a present cash value of approximately $21,000. Soon after the mediation, however, Cain learned that the policies had a cash value of only $9,000. Cain therefore repudiated the agreement, taking the position that it was unenforceable because it was based on a mutual mistake of fact. Accordingly, Cain declined to perform under the terms of the contract. Saunders then filed a motion with the trial court seeking enforcement of the agreement, including Cain's promise to execute and deliver the release. Cain defended against Saunders's motion on the ground of mutual mistake of fact. He appeals from the trial court's ruling in Saunders's favor.
As indicated by the plurality, Cain did not seek from the trial court a formal order of rescission of the settlement agreement. He presumably saw no need to do so. The settlement agreement was still executory, and Cain had repudiated it based on the mutual mistake of fact.
Thus, it was Saunders who invoked the aid of the court and sought an order relating to the agreement, namely, one to require Cain to perform.[1] It was as a *Page 897 defense to Saunders's motion that Cain presented the issue of the parties' mutual mistake.[2]
The trial court's order states that the court ordered the agreement "specifically enforced" based on its "find[ing] that "the settlement agreement is not ambiguous." Moreover, because of its finding that the agreement was not ambiguous, the trial court thought it was foreclosed from considering parol evidence to show the parties' mutual mistake of fact and, concomitantly, the court did not reach the latter issue.
Two issues are raised by the parties. The first is whether the trial court erred in enforcing the parties' settlement agreement in light of the parties' mutual mistake of fact — and similarly erred in refusing to consider parol evidence to show the mutual mistake — because the court had found the agreement to be unambiguous. The second issue is whether the Alabama Civil Court Mediation Rules prevented introduction of parol evidence from the parties' mediation process in order to show that the settlement agreement achieved in that process was a result of a mutual mistake of fact and therefore should not have been enforced.[3]
 I. Mutual Mistake of Fact as Shown by Parol Evidence
Saunders argues that the provision of the contract calling for the transfer of the two life-insurance policies is unambiguous. Consequently, according to Saunders, the trial court refused to consider parol *Page 898 
evidence to determine the provision's "true meaning."
I agree that the provision is unambiguous. Its meaning is clear: two assets, namely, two particular insurance policies, are to be transferred from Saunders to Cain under this provision. The issue presented by Cain, however, is not whether this provision is ambiguous. The issue presented by Cain is whether there was a mutual mistake of fact as to the underlying value of the assets to be transferred.[4]
It is a well-established rule of contract law that a mutual mistake of fact concerning a basic assumption on which a contract is made can, alone, make that contract unenforceable. The existence of such a mutual mistake is not dependent on the presence of fraud or ambiguity. Instead, a mutual mistake is recognized as a separate and independent ground for relief from the terms of a contract.
"It is well settled that a release given under a mutual mistake of fact may be avoided." American Nat'l Fire Ins. Co. v. Hughes, 624 So.2d 1362,1366 (Ala. 1993). Our courts have repeatedly stated that a party to a contract, including a settlement agreement, may obtain relief from the terms of that contract where it is obtained as a result of "fraud, accident or mistake." See, e.g., Burks v. Parker, 192 Ala. 250, 68 So. 271
(1915); Coaker v. Washington County Bd. of Educ., 646 So.2d 38, 42
(Ala.Civ.App. 1993) ("A settlement agreement will be reopened only for accident, mistake, or fraud." (emphasis added)); Tidwell v. Tidwell,505 So.2d 1236, 1238 (Ala.Civ.App. 1987) ("A contract may be rescinded if procured because of fraud or mutual mistake of law." (emphasis added)); and Nero v. Chastang, 358 So.2d 740, 743 (Ala.Civ.App.), cert. denied,358 So.2d 744 (Ala. 1978) (a settlement "may be opened for fraud, accident, or mistake" (emphasis added)).
Section 8-1-40, Ala. Code 1975, recognizes this principle. It provides that "specific performance cannot be enforced against a party to a contract . . . [i]f his assent was given under the influence of mistake, misapprehension, or surprise."[5] Cf. Section 8-1-2, Ala. Code 1975 (providing that a written contract may be judicially revised when, through a mutual mistake of the parties, that contract does not truly express the parties' intention).
The Restatement (Second) of Contracts § 152(1) (1981) provides: *Page 899 
 "Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154."[6]
See also 15A Am. Jr. 2d Compromise and Settlement § 463 (2000) ("In order for a mistake to constitute a basis for invalidating a compromise and settlement, the mistake must be a material one; it must be one in the absence of which the party who made it would not have entered into the compromise."); 15A C.J.S. Compromise Settlement § 36(b) (1967) ("Relief may be had where a settlement is entered into under a mutual mistake as to a material fact."); 3 Arthur L. Corbin, Corbin onContracts § 605 (1960) ("If the assumption as to the existence of the material factor is made by both parties, and the mistake is mutual, courts have been much more likely to compel rescission."); 13 Samuel Williston, A Treatise on the Law of Contracts § 1543 (3d ed. 1970) ("[E]ven a compromise may be based on the assumed existence of some fact, and then may be set aside for mutual mistake as to such basic assumption like any other contract."). Professors Calamari Perillo explain the general rule as to mutual mistake as follows:
 "Mutual mistake can render a transaction voidable. Where both parties share a common assumption about a vital existing fact on which they based their bargain and that assumption is false, the transaction may be avoided under certain circumstances. If, because of the mistake, a quite different exchange of values occurs from the exchange of values the parties contemplated, the transaction can be avoided, unless the risk of such a mistake is otherwise allocated by agreement, custom, or law."
John D. Calamari Joseph M. Perillo, The Law of Contracts, § 9.26 (4th ed. 1998).
Furthermore, when a party seeks relief from a contract on the ground of a mutual mistake of fact, parol evidence is admissible to show the mistake.[7] In a case involving reformation of a contract, our Supreme Court noted in Alabama Farm Bureau Insurance Co. v. Hunt, 519 So.2d 480
(Ala. 1987):
 "It is practically the universal rule that in suits to reform written instruments on the ground of fraud or mutual mistake, parol evidence is admissible to establish the fact of fraud or of a mistake and in what it consisted, and to show how the writing should be corrected in *Page 900 
order to conform to the agreement or intention which the parties actually made or had."
519 So.2d at 485 (emphasis added) (quoting 66 Am. Jur. 2d Reformation ofInstruments § 118, p. 644-45 (1973)); see also West v. Law,577 So.2d 445 (Ala. 1991) (the parol evidence rule is no impediment to admission of parol evidence where one seeks to reform a conveyance because of a mutual mistake). Likewise, "[i]f there is a mistake recognized in law, an agreement induced by it is ordinarily voidable; the parol evidence rule does not prevent a party from showing that a contract is void or voidable." Calamari Perillo at § 144(d). Other authorities are in accord: "Certain kinds of illegality, accident, and mistake have been said to make a transaction `void' — to prevent the existence of a contract. In such cases, parol evidence is admissible. . . . [I]t is in no case denied that oral testimony is admissible to prove fraud, illegality, accident or mistake." J. Murray,Murray on Contracts, § 108 (rev. 2d ed. 1974) (emphasis added); id. (evidence of fraud, illegality, "and other invalidating causes is admissible with no concern for the parol evidence rule"); 13 Williston onContracts § 1552 (Where "a mistake has been made by both parties," equity "gives relief" and "generally and necessarily admits any relevant parol or other extrinsic evidence."). See also Murray on Contracts § 128 ("Whether risks of value were or were not assumed is a question of fact calling for the interpretation of the parties' expression and all of the surrounding circumstances.").[8]
Fundamentally, however, it is important to note that, in order to serve as a basis for relief from a contract, a mistake must be as to anexisting fact. In Boles v. Blackstock, 484 So.2d 1077 (Ala. 1986), our Supreme Court recognized the distinction between a mutual mistake as to an existing fact and a mutual mistake as to some future condition or occurrence. Quoting from § 151 of the Restatement (Second) ofContracts, the Court noted that a "mistake" such as will prevent the enforcement of a contract is "a belief that is not in accord with the facts" and that the "erroneous belief must relate to the facts as they exist at the time of the making of the contract." 484 So.2d at 1082 (emphasis in original). Quoting Louisville Nashville Railroad Co. v.Solchenberger, 270 Ala. 536, 120 So.2d 704 (1960), the Boles court explained that there was a difference between a "future event" and an "existing fact," and that a mistake as to the former would not serve as a ground for relief, whereas a mistake as to the latter would. Id.[9] *Page 901 
Notwithstanding the well-established rule that a mutual mistake of fact can serve as a separate and independent ground for relief from contractual obligations, Saunders argues that this court should affirm the trial court's judgment. To achieve this outcome, Saunders would have this court rely on the following statement of our Supreme Court inCleghorn v. Scribner, 597 So.2d 693 (Ala. 1992):
 "[I]n Boles v. Blackstock, 484 So.2d 1077 (Ala. 1986), this Court reaffirmed the rule stated in Miles v. Barrett, 223 Ala. 293, 134 So. 661 (1931), to the effect that, in the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties from what appears within the four corners of the instrument itself, and parol evidence may not be introduced to establish the existence of a mutual mistake of fact when the release was signed as a basis for a rescission of that release. See, also, State Farm Mutual Automobile Ins. Co. v. Brackett, 527 So.2d 1249 (Ala. 1988). Thus, because voluntary settlements are favored, if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge or means of obtaining knowledge concerning the circumstances involving those rights (e.g., with respect to the extent of personal injuries suffered), and there is no fraud or other misleading incident, a compromise into which they have voluntarily entered must be enforced. . . ."
597 So.2d at 696-97 (emphasis added).
At first glance, the rule as articulated in the quoted portion of theCleghorn opinion would appear to conflict with the rule that a mutual mistake of fact, alone, will justify relief from a contract. There are two reasons, however, why Cleghorn does not apply to the present case.
First, the recapitulation of law set forth in Cleghorn and quoted above relates, by its terms, to rescission of an executed release. As previously noted, the agreement between the parties in the present case was executory. No release has yet been executed, and there is no request to rescind a release. This makes the holding of Cleghorn (and Brackett, upon which Cleghorn relies) inapposite and puts this case, instead, in the same posture as Solchenberger, where the Court, on the basis of a mutual mistake, refused to enforce an executory settlement agreement that called for the execution of a release. (See discussion in n. 5, supra.)
Second, there is a more fundamental distinction between this case andCleghorn, *Page 902 
as well as Brackett and the other cases upon which Cleghorn andBrackett rely: unlike the present case, those two cases concern afuture condition or event. In each of these cases, the parties had contractually assumed the risk of error in their understanding as to whether the plaintiff would develop or learn of injuries that were not known at the time of the contract. The contracts in both Cleghorn andBrackett specifically provided that the plaintiffs were releasing the defendant as to all claims on account of "all injuries, known andunknown . . . which have resulted or may in the future develop from [the] accident." In both cases, therefore, if this provision was unambiguous — and it was — there was nothing else for the trial court in those cases to consider. Regardless of any changes to the plaintiffs' physical condition after the contract was made, parol evidence of those changes was immaterial as to its enforcement. The parties had contractually assumed the risk that whatever they then believed in regard to the plaintiffs' present and future condition might turn out to be wrong. In the words of Calamari and Perillo, the releases in those cases "otherwise allocated" the risk of mistake as to the extent of the plaintiffs' condition.[10]
Since Cleghorn, there appear to have been two cases decided by our Supreme Court addressing the issue whether a mutual mistake of fact can serve as a ground to avoid rescission of a release. Like Cleghorn, Hallv. Gaines, 613 So.2d 370 (Ala. 1993), involved a mutual mistake of fact as to future conditions or events that subsequently proved to be incorrect. As the plaintiff did in Cleghorn, the plaintiff in Hall sought to avoid language in a release by which he expressly "released and discharged . . . [the defendants] . . . from any and all liability . . . on account of personal injuries . . . caused by or resulting or hereafter resulting to [the plaintiff] from an accident." 613 So.2d at 371. In affirming a summary judgment for the defendants, the Hall court explained that Boles v. Blackstock, 484 So.2d 1077 (Ala. 1986), the first case cited in the above-quoted passage from Cleghorn, dealt with the question whether "as a matter of law, reliance on a prediction as to futureevents will not support a claim for rescission of a release based on a claim of mutual mistake of fact." 613 So.2d at 372 (emphasis added).
The other post-Cleghorn case addressing the mutual-mistake issue in the context of a release was American National Fire Insurance Co. v. Hughes,624 So.2d 1362 (Ala. 1993). Unlike Cleghorn, however, Hughes dealt with a mutual mistake *Page 903 
concerning an existing fact, not a prediction or assumption as to future developments. At issue was the amount of an insured's crop loss that had occurred before the insured's execution of a release as to his insurance company. In such a context, it is important to re-emphasize that our Supreme Court reaffirmed in Hughes that "[i]t is well settled that a release given under a mutual mistake of fact may be avoided." 624 So.2d at 1366. The court also quoted from § 152 of theRestatement (Second) of Contracts, defining a "mutual mistake" as a "mutual misunderstanding concerning a basic assumption on which the contract was made."[11]
In the present case, the trial court specifically entered a judgment to enforce the terms of the parties' executory settlement agreement based on its finding that the agreement was "not ambiguous." As a result of this finding, the trial court declined to consider parol evidence. Saunders is correct to the extent that he asserts that parol evidence is not admissible to "vary the terms" of an unambiguous agreement. However, because Alabama law also recognizes that a party may obtain relief from a contract based on a mutual mistake of fact, the trial court erred in refusing to consider parol evidence for that purpose.[12]
 II. The Admissibility of Parol Evidence from the Parties' Mediation
Saunders also argues that the Alabama Civil Court Mediation Rules do not allow the introduction of the parol evidence upon *Page 904 
which Cain relied at trial. Saunders cites the provisions of Rule 11 of those Rules, which, in relevant part, provides as follows:
 "Each party shall maintain the confidentiality of the information received during the mediation and shall not in any arbitral, judicial, or other proceeding rely on or introduce as evidence:
 "(a) Views expressed or suggestions made by another party with respect to a possible settlement of the dispute;
 "(b) Admissions made by another party in the course of the mediation proceedings;
". . . .
 "The court shall neither inquire into, nor receive information about, the positions of the parties taken in mediation proceedings; the facts elicited or presented in mediation proceedings; or the cause or responsibility for termination or failure of the mediation process."
When an agreement is reached in mediation, however, and that very agreement is challenged in a subsequent court action as having been a result of fraud or mutual mistake occurring in the course of the mediation, the Alabama Civil Court Mediation Rules were not intended to prevent the injured party from proving such fraud or mistake. The use of the mediation process does not immunize the resulting contract from scrutiny under otherwise-applicable substantive law pertaining to the enforceability of contracts.
A careful examination of the language of Rule 11 supports this interpretation, particularly as it applies to the present case. Saunders relies primarily upon the concluding paragraph of Rule 11; however, it is that concluding paragraph that underscores the fact that Rule 11 contemplates that the views and admissions exchanged in the course of attempting to negotiate a mediated settlement will not be disclosed when that negotiation is unsuccessful. Specifically, the concluding clause of Rule 11 contemplates that there has been a "termination or failure of the mediation process." Thus, the parties are protected in any statements they make to one another in the course of attempting to settle their dispute if the mediation fails and they are forced to resort to a court action to resolve their underlying claims.
In this regard, Rule 11 of the Alabama Civil Court Mediation Rules is comparable to Rule 408 of the Alabama Rules of Evidence. Rule 408 provides that evidence of offers or acceptances of particular consideration in return for the proposed compromise of a claim "is not admissible to prove liability for or invalidity of the claim or its amount" and that "[e]vidence of conduct or statements made in compromise negotiations is likewise not admissible." Ala. R. Evid., Rule 408. However, "[t]his rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." Id.
In other words, Rule 408 does not preclude admission, in a subsequent judicial proceeding, of a compromise offer or a related statement proffered for some purpose other than the one specifically precluded (proof of validity or invalidity of the underlying claim). If the settlement agreement, itself, is being sued upon or asserted as a defense to a claim, Rule 408 does not apply. See 1 Charles W. Gamble, McElroy'sAlabama Evidence § 188.01(6)(e) (5th ed. 1996). Thus, Rule 408 does not prevent the use of representations made during the settlement discussions to establish that a resulting settlement was the product of fraud or a mutual mistake that occurred in those discussions.
Similarly, Rule 11 of the Alabama Civil Court Mediation Rules does not prevent a trial court from admitting evidence of *Page 905 
fraud or mistake occurring in the course of mediated settlement negotiations where, as here, the issue before the court is the impact of the alleged fraud or mistake on the resulting settlement agreement.
 III. Conclusion
On the basis of the foregoing, I would reverse the judgment and remand the case for further proceedings consistent with the law regarding enforceability of a contract that is based on a mutual mistake of fact.
[1] In this regard, this case came to the trial court in essentially the same posture as is typical for an action seeking enforcement of a contract. See, e.g., Louisville Nashville R.R. v. Solchenberger,270 Ala. 536, 120 So.2d 704 (1960).
[2] Cain plainly sought at trial to adduce evidence that there had been a mistake as to the value of the life insurance policies that should defeat Saunders's attempted enforcement of the settlement agreement, and this is the only issue argued by the appellant in his brief to this court. With respect to this argument by Cain, this court is not limited to considering the authorities cited to it by the parties, but has the inherent authority to conduct its own research as to the viability of legal theories duly advanced by the parties. See, e.g., Hennekens v.Hoerl, 160 Wis.2d 144, 158 n. 10, 465 N.W.2d 812, 818 n. 10 (1990) (appellate court is not limited to considering the authorities cited to it by the parties, but has inherent authority to conduct its own research).
[3] In the wake of the trial court's order specifically enforcing the contract, Cain uses the language of "rescission" in his brief to this court to describe the relief he requests. Elsewhere in his brief, however, he frames the issue before this court as "whether the trial court erred in enforcing a settlement agreement . . . based upon a mutual mistake." He also speaks in general terms about seeking "relief" because of the mutual mistake. Moreover, Cain specifically argues that "as a result of the mutual mistake as to a material provision on which the settlement agreement was based, the agreement should not have been enforced by the trial judge." Based on the procedural history of this case and the manner in which Cain's brief to this court is written, I conclude that Cain has fairly presented to us the issue whether the trial court erred in ignoring the parties' mutual mistake of fact and in ordering enforcement of the agreement. See, e.g., Thomas Eng'rs, Inc. v.McDonald, 57 Ala. App. 287, 290, 328 So.2d 293, 295 (Ala.Civ.App. 1976) ("Formal inconsistency between the statement of issues and the argument of issues should not prevent us from reaching the merits of the argument unless the inconsistency is inexcusably pronounced, misleading, confusing, or otherwise prejudices a party's ability to form a response to the argument."); Probst v. Brown, 250 Ala. 282, 285, 34 So.2d 497,498-99 (1948) (requiring only a "brief argument pointing out with reasonable conciseness the position of error relied upon"). I also would note that, in this case, because the parties' agreement is executory, there is no difference in relief between a ruling that the contract should not be specifically enforced and a ruling that it should be rescinded. Either way, the parties will be left in the same position they occupied before entering into the agreement.
[4] The plurality "interpret[s] Cain's argument on appeal as addressing whether the trial court properly concluded that the settlement agreement was unambiguous and was due to be enforced." 813 So.2d at 898. As I read his brief, however, Cain's argument is devoted entirely to the issue of mutual mistake, and he does not argue that the agreement is ambiguous or that it should not be enforced because of an ambiguity.
Indeed, ambiguity in the written language of a contract generally is not, in and of itself, a ground for not enforcing the contract. See,e.g., Ex parte Conaway, 767 So.2d 1117, 1119 (Ala. 2000) (overturning a decision of this Court and noting that it is possible for an ambiguity to evidence a "lack of mutual assent" where the ambiguity cannot be resolved and "construction becomes futile"; citing Conaway v. Nickles,767 So.2d 1116, 1117 (Ala.Civ.App. 1998) (Crawley, J., dissenting)).
In his brief, Saunders emphasizes the lack of ambiguity in the parties' agreement. It appears that this emphasis stems from an erroneous interpretation by Saunders of a reference to "ambiguity" in a passage from the case of Cleghorn v. Scribner, 597 So.2d 693 (Ala. 1992). See note 10 and accompanying text.
[5] Cain properly cites this provision to us as additional authority for the position he advanced before the trial court — that, under Alabama law, a party is not entitled to performance of an executory agreement if that agreement is based on a mutual mistake of fact.
[6] Section 154 provides, among other things, that a party bears the risk of a mistake when "the risk is allocated to him by agreement of the parties" or "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." Restatement(Second) of Contracts § 154(a) (b).
[7] It is true, of course, that, in cases where the terms of the agreement are ambiguous, the fact of that ambiguity also can serve as a basis for admitting parol evidence. In such cases, parol evidence may be admissible to resolve the ambiguity and determine the parties' true intent. That is not the reason for which Cain contends the trial court should have admitted parol evidence in this case, however. Instead, he contends that the parol evidence should have been admitted for the wholly separate purpose of establishing a mutual mistake of fact, making the contract unenforceable. The plurality notes that there is no argument properly before this court that the trial court improperly considered
parol evidence regarding the parties' intentions in entering into the settlement agreement. This is correct. It is the trial court's failure toconsider this evidence that Cain is complaining about by taking this appeal.
[8] The plurality cites three cases for the proposition that "[w]here the terms of a written settlement agreement are clear and unambiguous, the terms of that agreement may not be varied by the introduction of parol evidence regarding a mutual mistake of fact." 813 So.2d at 894. The first of these cases, State Farm Mutual Automobile Insurance Co. v.Brackett, 527 So.2d 1249 (Ala. 1998), is discussed hereinbelow. The second case, Marriott International, Inc. v. deCelle, 722 So.2d 760
(Ala. 1998), stands for the proposition that parol evidence will be allowed to clarify a contract that is ambiguous, but does not stand for the proposition that when a contract is not ambiguous, parol evidence cannot be admitted. The issue in Marriott was ambiguity as to the capacity of a signatory to a contract; no issue of mutual mistake was present as a basis for admitting parol evidence. The third case, Clark v. AlbertvilleNursing Home, Inc., 545 So.2d 9 (Ala. 1989), recognizes the mistake exception to the parol evidence rule: "Parol evidence is not admissible to contradict, vary, add to, or subtract from, [a written contract's] terms . . . in the absence of mistake or fraud or ambiguity." 545 So.2d at 11 (emphasis added).
[9] In Boles, a personal-injury case, the court distinguishedSolchenberger on the ground that the Boles case involved a release of all claims, "known and unknown," as a "full and final compromise" for the "purpose of precluding forever any further or additional claims arising out of the . . . accident." Boles, 484 So.2d at 1080. By this language, the parties contractually assumed the risk of a misunderstanding or error as to the plaintiff's physical condition. The Boles court emphasized the comprehensive reach of this particular release language in explaining why parol evidence of the plaintiff's actual condition would not be admissible in that case. Id. at 1081. In the present case, there is no comparable release language referencing the value of the insurance polices or allocating the risk that the parties have misunderstood the policies' value.
In State Farm Mutual Automobile Insurance Co. v. Brackett, 527 So.2d 1249
(Ala. 1988), our Supreme Court stated that Solchenberger also was distinguishable from Boles on the ground that, in Solchenberger, the agreement calling for the execution of a release was executory — the release had not yet been executed prior to the injured party's discovery of the mistake. In contrast, the Boles case, as well asBrackett, involved executed, written releases that contained clear and unambiguous terms. The present case is in the same posture asSolchenberger, with Saunders seeking to enforce the parties' mediated agreement for the execution of a release by Cain.
[10] The focus by Saunders on the issue of whether the contract was ambiguous appears to stem from the requirement, stated in the above-quoted passage from Cleghorn, that a release be "unambiguous in meaning." As discussed in the text, however, Cleghorn only relates to mistaken assumptions by the parties as to future conditions of an injured party. When the risk of error by the parties as to such future condition is expressly assumed and, indeed, is the essence of the dispute being settled, Cleghorn simply states that evidence from outside the "four corners" of the document cannot be admitted if that document also satisfies the requirements of unambiguity and absence of fraud. In other words, where there is no ambiguity, where there is no fraud, and where the parties have expressly assumed the risk of error as to the mutual mistake which is asserted, there is no basis to admit parol evidence. This is not the same as saying that where there has been a mutual mistake as to an existing fact, as to which the parties have not assumed the risk of error, parol evidence of the mistake can not be introduced. Cleghorn
holds that the absence of ambiguity (as well as the absence of fraud) is required to keep parol evidence out in the former situation; it does not hold (and no case holds) that ambiguity is required in order to admit parol evidence in the latter situation.
[11] The court in Hughes proceeded to explain, however, that the mistake at issue in that case as to the value of the crop losses had been an overestimation of those losses by the insurance adjuster himself. In contrast, there had been no mistake of fact by the insured; he had simply relied on the insurer's calculation and accepted the resulting insurance payment. The Supreme Court therefore concluded that there was no "mutual misunderstanding." Id. at 1366.
[12] Even under the holding in Cleghorn (which is inapplicable to this case for each of the reasons stated in the text) reversal and remand would still be required. This is so for two reasons. First, the rule articulated in Cleghorn assumes "the absence of fraud" and "no fraud or other misleading incident." 597 So.2d at 696. During the mediation process, in an effort to persuade Cain to accept the two policies as consideration, Saunders represented to Cain through the mediator that the combined cash value of the policies was $21,102. Saunders even wrote the cash value of each policy on a piece of paper during the mediation process. In Alabama, the legal definition of "fraud" includes even an innocent misrepresentation if the misrepresentation concerns an existing material fact upon which the plaintiff relied, proximately resulting in damage to him. Ala. Code 1975, § 6-5-101; Taylor v. Moorman Mfg.Co., 475 So.2d 1187 (Ala. 1985). The good faith of a party in making a representation that later proves to be false is immaterial; in the eyes of the law, the misrepresentation is as fraudulent as if it had been intentional. Smith v. Reynolds Metals Co., 497 So.2d 93 (Ala. 1986). Cain testified that he was led by Saunders to believe that the insurance policies at issue had a cash value of approximately $21,000, when in fact they were worth much less. Cain testified that this issue "was one of the last items negotiated," and that it was "the trigger that brought about what we thought was an agreement." Cain further testified that he would not have entered into the settlement agreement had he known the true cash value of the insurance policies at the time.
Second, Saunders owned and controlled the insurance policies at issue. Therefore, this also would appear to be a case in which the rule, even as articulated in Cleghorn, would not prevent the introduction of parol evidence because it is not one where "all [parties] have the same knowledge or means of obtaining knowledge concerning the circumstances."See Cleghorn, 597 So.2d at 696. See also Restatement (Second) ofContracts § 153 (a mistake of fact made by one party to a contract may cause the contract to be voidable where "the other party had reason to know of the mistake or his fault caused the mistake").