Tony OSWALD and Lynn
Oswald, Plaintiffs,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, et al., Defendants.

Civil Action No. 95–D–1404–N.

United States District Court,
M.D. Alabama,
Northern Division.

March 12, 1997.

Leah O. Taylor, Thomas P. Melton, IV, Birmingham, AL, for Plaintiffs.

Peter S. Fruin, Montgomery, AL, Lee E. Bains, Jr., Tony G. Miller, Stephen C. Jackson, Birmingham, AL, for Defendants.

## *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the Court is defendant Metropolitan Life Insurance Company's ("Met Life") "motion for summary judgment, or in the alternative, motion to strike claim for emotional distress and punitive damages" filed October 16, 1996. Plaintiffs filed a response in opposition on November 7, 1996. Met Life filed a letter brief in reply on February 4, 1997. Plaintiffs responded on February 12, 1997. Upon careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the Court finds that Met Life's motion is due to be granted in part and denied in part.

## JURISDICTION

The Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The parties do not contest personal jurisdiction or venue.

## FACTUAL HISTORY

In October of 1986, plaintiff Tony Oswald ("Mr. Oswald"), then residing in England, purchased a life insurance policy from Met Life. The life insurance policy purchased by Mr. Oswald (Policy No. 861161447 A) was a "whole life policy" in the amount of $65,-000.00. Mr. Oswald purchased the policy after listening to a sales presentation made by Met Life's agent, Elliot Schwartz ("Schwartz"). In this presentation, Schwartz provided Mr. Oswald with an "accelerated payment" illustration. This illustration demonstrated how, under certain conditions, Mr. Oswald's policy could become "self-sustaining" after Mr. Oswald had made a specified number of premium payments. That is, according to the illustration, there could come a point in time where Mr. Oswald would have to make no further premium payments to sustain his policy.

The accelerated payment illustration which Schwartz showed Mr. Oswald demonstrated that, under the conditions in the illustration, the policy would become self-sustaining in six years. The illustration, however, contained the following disclaimer in two locations:

> The cash outlay illustrated shows the results if the current dividend scale continues without change. Dividends are not guaranteed and may increase or decrease in the future. If future dividends decrease it is possible that the accumulated dividends with interest may not be sufficient in some future years to pay the full cur-

rent premium and some cash outlay may be required.

Defs.' Ex. 1 attached to Mot for Summ. J. Additionally, the final page of the illustration contains the following statement:

The number of years that premium payments in cash are required under the Accelerated Payment Plan is based on the dividend scale in effect at the time the policy is issued. The cash outlay illustrated shows the results if the current dividend scale continues without change. Dividends are not guaranteed and may increase or decrease in the future. If future dividends decrease it is possible that the accumulated dividends with interest may not be sufficient in some future years to pay the full current premium and some cash outlay may be required.

Defs.' Ex. 1. Nevertheless, Mr. Oswald contends that Schwartz told him the policy would become self-sustaining in six years and that he relied on this representation when purchasing the policy.

In December of 1987, Schwartz returned to the plaintiffs' home in England and sold Lynn Oswald ("Mrs. Oswald") an insurance policy on behalf of Met Life. Mrs. Oswald purchased a whole life policy (Policy No. 875102455 A) in the amount of $25,000.00. Again, Schwartz showed the plaintiffs an accelerated payment illustration and explained that the policy could become self-sustaining. The accelerated payment illustration which Schwartz showed Mrs. Oswald reflected that the policy could become self-sustaining in seven years. The illustration contained disclaimers identical to those quoted above. Also, Mrs. Oswald's accelerated payment illustration had the following statement on the bottom of each page: "Dividends based on Jan. 1987 scale that uses current interest, mortality and expense rates. Illustrative figures are not guarantees or estimates for the future." Mrs. Oswald asserts that Schwartz told her the policy would become self-sustaining in six years and that she relied on this representation when purchasing the policy.

In December of 1992, Mr. Oswald discovered that his policy had not become self-sustaining within the six years as was allegedly represented by Schwartz. After making this discovery, the plaintiffs contacted Met Life. The plaintiffs assert that a representative from Met Life told them that Mr. Oswald's policy would become self-sustaining in November 1993, and Mrs. Oswald's policy would become self-sustaining in February 1994. In November of 1993, the plaintiffs spoke with Met Life representative Terry Warren ("Warren"). The plaintiffs allege that Warren told them that Mr. Oswald's policy would become self-sustaining in November 1994, and Mrs. Oswald's policy would become self-sustaining in February 1995. At the time this suit was filed in October 1995, neither of the plaintiffs' policies had become self-sustaining.

The plaintiffs filed this complaint October 30, 1995. The complaint contains two counts. Count I states a claim against Met Life for fraudulent misrepresentation. Count II asserts that Met Life acted in a negligent and wanton manner.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.; see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

### PLAINTIFFS' MOTION TO STRIKE

In support of its motion for summary judgment, Met Life claims to rely solely on the Complaint and a "sworn statement given by the plaintiffs in a prior case in which they were not parties." It is this "sworn statement" which is the subject of plaintiffs' motion to strike filed November 7, 1996. For the reasons set forth below, plaintiff's motion is due to be denied.

In an action styled *Danny Bird v. Metropolitan Life Insurance Company, Philip Olin, and Cecil Chaney*, CV–94–257, filed in the Circuit Court of Elmore County, Alabama, the plaintiffs in this case were listed by plaintiff Bird as pattern and practice witnesses. Met Life subpoenaed the plaintiffs to appear for deposition. Bird sought a protective order prohibiting Met Life from taking the plaintiffs' deposition outside the presence of Bird's counsel. The order was granted. Nevertheless, Met Life deposed the plaintiffs without Bird's counsel in attendance. Bird's counsel filed a motion for sanctions. While the state court did not grant this motion, it refused to allow Met Life to use the plaintiffs' deposition testimony for any purpose during the trial.

The plaintiffs contend that the deposition testimony they gave in *Bird* should not be admissible here because: (1) it was taken in violation of the state court's order and (2) plaintiffs needed the advice of counsel to properly answer Met Life's questions. This Court respects the state court's decision to exclude the plaintiffs' deposition testimony from use in the *Bird* case. The state court's sanction was unquestionably an appropriate response to Met Life's violation of the state court's order. However, Met Life has not violated an Order of this Court. The state court has sanctioned Met Life's inappropriate conduct—the state court's sanction is in no way mitigated if Met Life is allowed to use the plaintiffs' deposition testimony in this case. In this Court's opinion Met Life has been sufficiently sanctioned for its actions in the *Bird* case. The Court will impose no further sanctions on Met Life for its actions in the state court case.

Plaintiffs' second basis for striking their deposition testimony is, essentially, that their deposition testimony is unreliable.

Plaintiffs claim they needed the advice of counsel to understand and interpret Met Life's questions. They also claim they needed additional documentation and preparation to accurately answer Met Life's questions. The Court notes, however, that the plaintiffs were not, at the time they were deposed, represented by counsel. Furthermore, even if Bird's counsel had been present at the deposition, counsel would have represented Bird's interests, not the plaintiffs' interests. Bird's counsel would not have served as a disinterested moderator seeking to insure the objective reliability of plaintiffs' testimony. Rather, if Bird's counsel had been present, it would have been his duty to do all he could to insure that the plaintiffs' testimony did not harm his client's interests. The presence of Bird's counsel would not have improved the reliability of plaintiffs' testimony.

It is not contested that the statements made by the plaintiffs in the deposition were given under oath. Nor have the plaintiffs now asserted that their answers to Met Life's questions were untrue or otherwise incorrect. Under these circumstances the Court finds that plaintiffs' deposition testimony has sufficient indicia of reliability to be admissible. Accordingly, plaintiffs' motion to strike is due to be denied.

## DISCUSSION

■ Met Life contends that the plaintiffs' claims are barred by the applicable statute of limitations. In Alabama, fraud claims must be brought within two years of the date a plaintiff discovers the fact constituting fraud. Ala.Code §§ 6–2–38(1), 6–2–3 (1995). A plaintiff will be deemed to have discovered the fraud when he or she "should

have discovered the fraud in the exercise of reasonable care." *Fabre v. State Farm Mut. Auto. Ins. Co.*, 624 So.2d 167, 168 (Ala.1993) (citing *Hickox v. Stover*, 551 So.2d 259 (Ala. 1989)). In other words, a fraud claim accrues "at the time of the discovery of facts that, on the part of a person of ordinary prudence, would provoke inquiry that, if followed up, would lead to the discovery of the fraud." *Id.* Normally, the question of when a fraud has been "discovered" is one for the jury. *Id.* at 168–69; *Hicks v. Globe Life and Accident Ins. Co.*, 584 So.2d 458, 462 (Ala. 1991). However, this question may be decided as a matter of law "where the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud." *Hicks*, 584 So.2d at 463.

■ Here, the plaintiffs' claim that Schwartz fraudulently represented that the plaintiffs' policies would become "self-sustaining," i.e., that they would have to make no further payments, after six years.[1] From their deposition testimony, it is clear that the plaintiffs relied on Schwartz's representations to purchase the policies. It was Schwartz's "guarantee" that the policies would be paid-up in a set number of years which induced the plaintiffs to purchase the policies even though they were required to pay what they considered to be relatively high premiums. Mrs. Oswald testified:

He pushed the, as I understand, the whole life policy. The premiums were kind of high to us. Of course, at the time we were quite young, Mr. Oswald wasn't making that much money.

But the thing that [Schwartz] stressed was that even though the premiums were

<hr>

1. In their affidavit submitted November 7, 1997, the plaintiffs aver that Schwartz represented Mrs. Oswald's policy would be paid up in seven years, rather than six years as the plaintiffs attested to in their earlier deposition. The plaintiffs assert that their earlier deposition testimony is equivocal in that some portions of their deposition testimony plaintiffs stated that Schwartz represented Mrs. Oswald's policy would be paid up in seven years. However, after carefully reviewing plaintiffs' deposition testimony, the Court finds that the plaintiffs' deposition is unequivocal and plaintiffs believed Mrs. Oswald's policy would be paid up in six years. Furthermore, in both the complaint and the narrative

summary of material facts portion of plaintiffs' brief, plaintiffs allege that Schwartz represented Mrs. Oswald's policy would be paid up in six years. Accordingly, the Court finds that plaintiffs' affidavit statement pertaining to the length of time in which Mrs. Oswald's policy was to be paid up is inherently inconsistent with her earlier deposition testimony and is hereby struck from the record. *See Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986); *W.C. Lane v. Celotex Corp.*, 782 F.2d 1526, 1531 (11th Cir. 1986); *Van T. Junkins and Associates v. U.S. Industries*, 736 F.2d 656 (11th Cir.1984); *see also Moore v. Beneficial National Bank U.S.A.*, 876 F.Supp. 1247, 1253–54 (M.D.Ala.1995).

high, after six years we would have to pay nothing else, that the premiums would be paid out of dividends ... the bottom line was, we would be buying life insurance, paying dividends for six years, and at the end of the six years our life insurance would be paid up.

Oswald Dep. at 6–7, 8. Thus, the crucial fact upon which the plaintiffs' decision to purchase the policies hinged was that the policies would be paid up in six years. Therefore, the relevant inquiry for the Court is to determine when the plaintiffs actually knew that the policies would not be paid up in six years or when the plaintiffs had actual knowledge of facts which would lead a reasonable person to believe the policies would not be paid up in six years. *See Jarzen v. Wright,* 679 So.2d 1086, 1089–90 (Ala.Civ. App.1996).

The plaintiffs' deposition testimony provides the answer to the Court's inquiry. The plaintiffs testified unequivocally that they were informed in November of 1992 that the policies would not be paid up in six years. Mr. Oswald testified that he got out of the Air Force in 1992. Oswald Dep. at 13. He then went on to testify:

When I got out of the Air Force—I mean when my enlistment ran out—and I knew the last payment that went to Met-Life would have been November, or it may have been October. I'm not sure there.

But when that last payment was up, I had to call [Met Life] to let them know to get it taken out of the bank account; and that's when they told me that it wouldn't be paid up when I thought it was. And that's when I went back to get the policies to take a closer look.

. . .

They told me that we were two months behind on hers and one month behind on my policy, and that instead of (my policy) being paid off in November '93, which would have been six years for my policy, they told me that it would be November '94, and February of '95 for her policy.

Oswald Dep. at 15, 17. The testimony of Mrs. Oswald confirms that the plaintiffs knew by the end of 1992 that their policies would not be paid up as Schwartz had represented:

Mr. Grantham: Okay. So did they tell you why it was going to take longer, and yours would be paid up in November '94 and hers in February '95, instead of what you had originally thought?

Mrs. Oswald: They said at that point that dividends had decreased. I mean, they didn't actually explain anything, they said it was due to a decrease in dividends, and that it would be another year.

And I remember we were pretty ill about it, but at that point we didn't figure there was anything we could do about it. We got out our policies and looked in all the things that he had written....

And I figured, well, there's nothing we're going to be able to do about it, it will be another year, we'll just have to grin and bear it.

Oswald Dep. at 18–19. On the basis of these statements, the Court finds that the plaintiffs actually knew by November 1992 that the policies would not be paid up within the length of time Schwartz had allegedly represented. Because the plaintiffs did not file suit until October 1995, Alabama's two-year statute of limitations bars their fraud claim.

■ The plaintiffs, however, argue that their fraud claim is not barred because (1) Met Life's actions constitute a continuous tort in which the final tortious act did occur until November 1993, and/or (2) Met Life committed a wholly separate fraud in November 1993 when Met Life's agent, Warren, allegedly represented that the plaintiffs' policies would become self-sustaining in November 1994, and February 1995, respectively. The Court does not agree.

■ A "continuous tort" is "repeated tortious conduct which has repeatedly and continuously injured a plaintiff." *Continental Cas. Ins. Co. v. McDonald,* 567 So.2d 1208, 1215 (Ala.1990). A continuous tort can be analogized to the common law action of continuing trespass where the repeated actions of a defendant combine to create a single cause of action in tort. *Moon v. Harco Drugs, Inc.,* 435 So.2d 218, 220 (Ala.1983). Thus, a continuous tort may be found:

(1) when an employer exposes its employee on a continuing basis to harmful substances and conditions; (2) when there is a "single sustained method pursued in executing one general scheme," as in a blasting case; and (3) when a plaintiff landowner seeks damages for the contamination of a well or stream.

*Id.* at 220–21 (citations omitted); *Jennings v. City of Huntsville,* 677 So.2d 228, 230 (Ala. 1996).

The plaintiffs assert that in *Independent Life and Accident Ins. Co. v. Harrington,* 658 So.2d 892 (Ala.1994), the Alabama Supreme Court held that the continuous tort doctrine may apply to a claim of fraudulent suppression. In *Harrington,* the court held that even though the plaintiff filed her fraudulent suppression claim almost ten years after it had "accrued," [2] the plaintiff's claim was not barred by the statute of limitations because the defendant had suppressed certain facts until shortly before the plaintiff filed suit. *See id.* at 901 n. 1. The plaintiffs argue that this Court should extend the holding in *Harrington* to the instant case and find that the continuing tort doctrine applies to fraudulent misrepresentation as well as fraudulent suppression. [3]

Fraudulent suppression differs from fraudulent misrepresentation in that fraudulent suppression involves concealment of facts which the defendant knows are material and which the defendant is under a duty to disclose. *E.g. Mason v. Chrysler Corp.,* 653 So.2d 951 (Ala.1995). In the context of a fraudulent suppression claim, the essence of a defendant's tortious conduct is an omission. Until the defendant remedies this omission by revealing the non-disclosed material facts, the defendant continues to act in a tortious manner. Fraudulent misrepresentation, on the other hand, involves a false affirmative representation. The defendant's tortious conduct is complete once the representation has been made. Fraudulent suppression has an inherent element of continuity; fraudulent misrepresentation does not. Consequently, the Court will not extend the continuous tort doctrine to plaintiff's claim of fraudulent misrepresentation.

 In the alternative, plaintiffs argue that Met Life committed separate frauds each time the plaintiffs called Met Life to inquire when their policies would become self-sustaining. To establish that the representations made in these calls constitute fraud, the plaintiffs must demonstrate that Met Life: (1) misrepresented a material fact; (2) willfully to deceive or recklessly without knowledge; (3) upon which plaintiffs justifiably relied; and (4) that plaintiffs were damaged as a proximate result of the misrepresentation. *Hall v. Gaines,* 613 So.2d 370, 372 (Ala.1993). To meet the third prong of this test, the plaintiffs must demonstrate that "given the particular facts of [their] knowledge, understanding, and present ability to fully understand the nature of the subject transaction and its ramifications ... [the] representation is [not] one so patently and obviously false that [the plaintiffs] must have closed [their] eyes to avoid the discovery of the truth." *Id.* (citations omitted).

Plaintiffs contend that Met Life perpetrated a fraud upon them in November 1993 when Warren allegedly informed the plaintiffs that their policies would become self-sustaining in November 1994, and February 1995, respectively. Met Life argues that, even if Warren made this representation to the plaintiffs, the plaintiffs could not have justifiably relied on the representation. The plaintiffs' testimony reveals that before this alleged representation was made, the plaintiffs knew that the date the policies were to become self-sustaining was dependent on the

---

**2.** It does not appear that the court used the word "accrued" to mean that the plaintiff had knowledge of the suppressed facts such that the statute of limitations began to run ten years prior to the time plaintiff filed suit. Rather, it appears that the court uses "accrued" to indicate the point in time when all the elements of plaintiff's cause of action were in existence. *See Harrington,* 658 So.2d at 901 n. 1.

**3.** The Court notes that the court in *Harrington* made no explicit holding on the applicability of the continuing tort doctrine to fraud claims. The court referred to the plaintiff's claim as a "continuing cause of action," but made no further analysis. 658 So.2d at 901 n. 1.

dividend rate paid under the policy. In the *Bird* trial, under oath, Mrs. Oswald testified:

> The first time we were aware the policy was not going to be paid up, my husband had called the one eight hundred Met Life number and they said, no, I'm sorry your policy is not going to be paid up in November of '92. There was no reason given for that. We were told it would be November of '93, February of '94. So he contacted Terry Warren in the Montgomery office and Terry Warren told him that—at that point he said that dividends did not build up. You know, that the dividends did not accrue fast enough to cover the premiums for the following years. That was the first time we had any idea that the fact that our policies was supposed to be paid up in six years was attendant upon a dividend rate of any kind.

Tr. at 440–41 attached to Met Life's Letter Br. filed Feb. 4, 1997.[4] Additionally, it is clear that the plaintiffs knew prior to November 1993, that the dividend rate was not guaranteed. When asked if Met Life had explained why the policies would not be paid up when originally represented, Mrs Oswald testified: "They said at that point that dividends had decreased. I mean, they didn't really explain anything, they said it was due to a decrease in dividends, and that it would be another year." Oswald Dep. at 18.

The Court finds that the plaintiffs cannot have justifiably relied on the alleged representation made in November 1993. The plaintiffs knew that the policies' paid up date was dependent on dividends. The plaintiffs also knew that the dividend rate was not guaranteed. Given this knowledge, the plaintiffs cannot justifiably claim that the representation made in November 1993 was a guarantee. Nor could the plaintiffs justifiably rely on mere speculation. *See Crowne Investments, Inc. v. Bryant,* 638 So.2d 873, 877 (Ala.1994). Therefore, the Court finds

that the alleged representation made in November 1993 does not constitute a separate act of fraud.

 The second count of plaintiffs' complaint purports to state a claim against Met Life for negligent and wanton conduct. The representation allegedly made by Warren in November 1993, forms the factual basis of this claim. Met Life asserts that the plaintiffs' negligence claim is subsumed by their fraud claim. Met Life does not, however, cite any legal authority for this contention.

It is a basic premise of the law that the same set of facts may support distinct, even inconsistent, legal theories. Here, plaintiffs have relied on a single set of facts to assert two distinct legal claims. The fact that plaintiffs' fraud claim is barred does not mean that their negligence claim is not viable. Plaintiffs' negligence claim accrued in November 1993. In Alabama, the statute of limitations for a negligence action is two years. Ala.Code § 6–2–38; *Henson v. Celtic Life Ins. Co.,* 621 So.2d 1268, 1274 (Ala.1993). Plaintiffs filed their complaint October 30, 1995. Therefore, plaintiffs' negligence claim remains viable.

### Met Life's Motion to Strike

 Met Life seeks to strike plaintiffs' claims for emotional distress and punitive damages. Met Life contends that English law governs the substantive issues in this case. Met Life's contention is premised on the fact that the initial alleged misrepresentations took place in England. However, the Court has already found that the plaintiffs' fraud claims are barred by the Alabama statute of limitations. The only claim which remains viable is plaintiffs' negligence claim. Plaintiffs' negligence claim accrued in 1993 while the plaintiffs were living in Alabama. Therefore, the relevant substantive law is that of Alabama. Met Life does not and cannot claim that Alabama law forbids the

---

4. In an affidavit submitted November 7, 1996, the plaintiffs aver, "It was not until April, 1994, upon MetLife's response to our complaint filed with the Alabama Department of Insurance, that we learned that the dates our policies would become eligible for the Accelerated Payment Plan were not guaranteed and were dependent upon MetLife's dividend scales." The Court

finds that this statement is self-serving and inherently inconsistent with the plaintiffs' prior sworn testimony. For this reason, the Court strikes this portion of the plaintiffs' affidavit. *See Tippens,* 805 F.2d at 953; *W.C. Lane,* 782 F.2d at 1531; *Van T. Junkins,* 736 F.2d 656; *see also Moore,* 876 F.Supp. at 1253–54.

plaintiffs from claiming punitive damages and damages for emotional distress. Accordingly, Met Life's motion to strike is due to be denied.

## *ORDER*

For the reasons set forth above, it is CONSIDERED and ORDERED that Met Life's "motion for summary judgment or, in the alternative, motion to strike plaintiffs' claims for emotional distress and punitive damages" be and the same is hereby GRANTED in part and DENIED in part. Specifically:

(1) Met Life's motion for summary judgment is GRANTED against plaintiffs' fraud claim in Count I of the complaint;

(2) Met Life's motion for summary judgment is DENIED against plaintiffs' negligence and wantonness claim in Count II of the complaint; and,

(3) Met Life's motion to strike plaintiffs' claims for emotional distress and punitive damages is DENIED.

It is further CONSIDERED and ORDERED that plaintiffs' motion "to strike the use of plaintiffs' sworn statement" be and the same is hereby DENIED.