An insurance company that insured a peanut farmer against crop loss filed an action to recover from the farmer what it claimed was an overpayment. A jury found the issues in favor of the farmer. The company appeals and raises three basic questions: (1) Did the trial court err in instructing the jury on the law of release and accord and satisfaction; (2) Did the trial court err in allowing the jury to determine the legal effect of the release language contained on the indorsement side of the payment draft that the company issued to Hughes; and (3) Did the trial court err in denying the company's motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. We answer the questions in the negative and we affirm.
 FACTS
The record, viewed in a light most favorable to the plaintiff, presents the following facts:
For approximately 45 years before this action, Jim Frank Hughes had been a peanut farmer in Brundidge, Alabama, and in 1989 he grew peanuts on five separate farms. At all times relevant to the issues presented on this appeal, Hughes maintained crop insurance through American National Fire Insurance Company ("American"). In 1989, many *Page 1364 
farmers in the area of Brundidge suffered large-scale crop damage because of drought. When Hughes harvested and sold his 1989 peanut crop, he discovered he had a loss, and he contacted his insurance agent. Jim McLean, American's crop adjuster, computed Hughes's losses and found that Hughes had suffered losses on two of his five farms.
McLean informed Hughes of the amount he would receive from American, but before American paid Hughes for his losses, McLean claimed to have discovered that he had erroneously left off two loads of peanuts in making his calculations. According to McLean, this error entitled Hughes to about $2,000 less than he was previously told he would receive. McLean corrected his mistake, and American subsequently paid Hughes $46,943 for his 1989 crop losses.
Sometime later, during a routine audit of claims paid by American during 1989, Hughes's claims were randomly selected for audit. During this audit, American claims, it discovered that McLean had mistakenly omitted another 10 loads of peanuts in calculating Hughes's losses, and it claims that this mistake resulted in an overpayment to Hughes of $28,927. American asked Hughes to refund the amount of the overpayment; when he refused, American sued for the amount it claimed it had overpaid him.
A jury returned a verdict for American in the amount of $18,000. After considering American's motions for JNOV and Hughes's motion for a new trial, the trial court granted a new trial because of what it considered to be an inconsistent jury verdict. At the second trial, the jury returned a verdict for Hughes; American filed motions for JNOV or, in the alternative, for a new trial, both of which were denied by the trial court. American appeals.
 I
We first address American's claim that the trial court erred in instructing the jury on the law of release and accord and satisfaction. American argues that the trial court erred when it gave instructions requested by Hughes on the law of release and accord and satisfaction, because, American contends, there was no evidence to support giving such instructions. It is true that parties are "entitled to proper jury instructions regarding the issues presented, and an incorrect or misleading charge may be the basis for the granting of a new trial."Nunn v. Whitworth, 545 So.2d 766, 767 (Ala. 1989). However, the trial court found sufficient evidence to create a jury question as to the existence of an accord and satisfaction or a release, and such evidence would also support the trial judge's decision to give jury instructions on the law of accord and satisfaction and release. In addition, we note that Hughes's requested jury instructions on the law of release and accord and satisfaction are correct statements of Alabama law. In part, the trial court instructed the jury that:
 "A release is the giving up or abandoning of a claim or right by the person in whom it exists or to whom it accrues to the party against whom the claim exists or the right is to be enforced or exercised. If you are reasonably satisfied by the evidence that the Plaintiff executed a release of his right to future claims or demands against [American] for loss or damage to the crop for which he was paid, then [American] is barred from avoiding that release unless they can show that such release was obtained by mistake of fact, fraud or lack of consideration.
 "The court also instructs the jury that in the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties, to be judged by the court from what appears within the four corners of the instrument itself, and parol evidence is not admissible to impeach or vary its terms. The court further instructs the jury that, in the absence of fraud or other vitiating cause available, a release, when in writing, must be given effect according to its plain terms."
". . . .
 "An accord is an agreement to accept an extinction of an obligation, something different from or less than that to which the person agreeing to accept is claiming or entitled. Acceptance of the consideration of an accord extinguishes the obligation and is called satisfaction." *Page 1365 
Viewing the evidence that was before the court, we agree that there was sufficient evidence to create a jury question as to the existence of an accord and satisfaction or a release, and, therefore, we hold that the trial court did not err in giving the requested jury instructions.
 II
Next, we examine American's assertion that the trial court erred in allowing the jury to determine the legal effect of the release language contained on the indorsement side of the payment draft issued to Hughes by American. The back of the payment draft from American to Hughes contained the following language:
 "In full payment of all claims and demands for loss and damage to crops insured under MPCI policy named herein, arising from, or result of hazard insured by the policy; and the same company, in consideration of such payment, is hereby discharged forever from all further claim or demand by reason of such loss or damage."
American contends that the legal effect of the draft was a matter for the court to decide and that the court erred in allowing the jury to determine the issue. Hughes contends that the language on the back of the draft created a jury question as to the effect the language had on the dealings between the parties and that the court properly submitted the construction of the release to the jury. Hughes also contends that there was sufficient evidence to support the jury's finding that the language constituted a release or an accord and satisfaction and that there was sufficient evidence to support the jury's finding that American is bound thereby.
Section 12-21-109, Ala. Code 1975, states: "All . . . releases and discharges in writing . . . must [be given] effect according to their terms and the intentions of the parties thereto." In addition, if a document is unambiguous, its construction and legal effect are questions of law that may be decided, under appropriate circumstances, by summary judgment.Jehle-Slauson Construction Co. v. Hood-Rich Architects Consulting Engineers, 435 So.2d 716 (Ala. 1983). American contends that, in the event Hughes later discovered he was underpaid, the language on the back of the draft simply prevented Hughes from asking for more money, but that it did not prevent American from seeking a refund of an overpayment. However, in Conley v. Harry J. Whelchel Co., 410 So.2d 14, 16
(Ala. 1982), this Court construed a release and concluded, "The release cannot be construed as valid to [one party], yet void as to [another]. The entire release must be construed as either [valid] or invalid as to all parties." (Emphasis original.)
Because the trial court found sufficient evidence to present the question whether the language on the back of the draft constituted a release or an accord and satisfaction, the trial court could also have found that a jury question was presented as to whether the parties should be bound by the terms of the language contained on the back of the draft. In Smith v. StateFarm Mutual Insurance Co., 494 So.2d 7 (Ala. 1986), William Smith was injured in an automobile accident with Debra Jennings; Jennings's insurer, State Farm, issued Smith a check for $277, which Smith indorsed and cashed. Smith later sued Jennings for damages, based on his personal injuries, and Jennings moved for a summary judgment on the ground that Smith had executed a release to State Farm by indorsing and cashing the check. Smith argued that he had been told by State Farm's agent that the check was in settlement of his property damage claim only, and not of his claim based on personal injuries. The trial court rejected Smith's contentions and entered a summary judgment for Jennings. Smith then sued State Farm and its agent, alleging fraud in the procurement of the release. The trial court entered a summary judgment for State Farm. This Court affirmed, stating the rule from Miles v. Barrett,223 Ala. 293, 134 So. 661 (1931), and holding:
 " 'In the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties to be judged from what appears within the four corners of the instrument itself and *Page 1366 
parol evidence is not admissible to impeach it or vary its terms.' "
494 So.2d at 8 (quoting Conley v. Harry J. Whelchel Co.,410 So.2d 14, 15 (Ala. 1982)). In Miles, the Court found that there was ample evidence to support a finding by the trial court that the language on the indorsement side of the settlement draft was unambiguous, and that the language was to be construed and given the legal effect of a mutual release. Similarly, we agree with the trial court's determination that the jury was presented with evidence sufficient to warrant a finding that the language on the back of the draft could be construed as a mutual release.
American, nevertheless, contends that even if the language on the settlement draft in this case could be construed as a release, the release should be avoided because of a mutual mistake. It is well settled that a release given under a mutual mistake of fact may be avoided. Miles v. Barrett, 223 Ala. 293,134 So. 661 (1931). In Finley v. Liberty Mutual Insurance Co.,456 So.2d 1065 (Ala. 1984), the appellant argued that a release between the parties should be avoided because, the appellant argued, the parties lacked mutual assent in signing the release, and the appellant argued that the evidence of the lack of assent established mutual mistake. In Finley, this Court quoted the definition of mutual mistake from Restatement(Second) of Contracts § 152 (1981), which calls for a "mutual
misunderstanding concerning a basic assumption on which the contract was made."
Hughes does not contend that he made a mistake. Indeed, Hughes contends that he was completely unaware of the amount due him under his insurance policy and that he relied on American's adjusters to calculate the losses. American contends that McLean made a mistake in computing Hughes's losses and that Hughes was mistaken as to his belief about the production of peanuts on one of the farms. However, such mistake would not rise to the level of a "mutual misunderstanding concerning a basic assumption on which the contract was made," and, accordingly, we hold that the trial court did not err in allowing the jury to determine the legal effect of the release language.
 III
Finally, we consider American's contention that the trial court erred in denying its motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. We note that "[t]he strength of the jury verdict is based upon the right to trial by jury, White v. Fridge,461 So.2d 793 (Ala. 1984), and a jury verdict is presumed to be correct. Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162
(Ala. 1988). This presumption is strengthened by the trial court's denial of a motion for a new trial." King v. W.A. Brown Sons, Inc., 585 So.2d 10, 12 (Ala. 1991). There is a strong presumption as to the correctness of a jury verdict:
 " 'Upon review of a jury verdict, we presume that the verdict was correct; we review the tendencies of the evidence most favorably to the prevailing party; and we indulge such reasonable inferences as the jury was free to draw from the evidence. We will not overturn a jury verdict unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury's verdict was wrong and unjust.' "
585 So.2d at 13, quoting Campbell v. Burns, 512 So.2d 1341
(Ala. 1987).
The standard of review applicable to a ruling on a motion for JNOV is identical to the standard used by the trial court in granting or denying a motion for directed verdict. Turner v.Peoples Bank of Pell City, 378 So.2d 706 (Ala. 1979). Thus, in reviewing the trial court's ruling on the motion, we review the evidence in a light most favorable to the nonmovant, Ritch v.Waldrop, 428 So.2d 1 (Ala. 1982), and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination. Macon County Comm'n v.Sanders, 555 So.2d 1054 (Ala. 1990).
In Attalla Golf Country Club, Inc. v. Harris,601 So.2d 965, 970 (Ala. 1992), this Court set out its rule of review: *Page 1367 
 "A strong presumption of correctness attaches to a jury verdict in Alabama, if the verdict passes the 'sufficiency test' presented by motions for directed verdict and JNOV. Christiansen v. Hall, 567 So.2d 1338, 1341 (Ala. 1990); Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160 (Ala. 1988). This presumption of correctness is further strengthened by a trial court's denial of a motion for new trial. Christiansen, 567 So.2d at 1341. Denying a motion for new trial is within the sound discretion of the trial court. See, Hill v. Cherry, 379 So.2d 590 (Ala. 1980). This Court will not reverse a judgment based on a jury verdict on a sufficiency-of-the-evidence basis unless the evidence, when viewed in a light most favorable to the nonmovant, shows that the verdict was 'plainly and palpably wrong and unjust.' Christiansen, 567 So.2d at 1341."
See, also, Green Tree Acceptance, Inc. v. Standridge,565 So.2d 38 (Ala. 1990), citing Hill v. Cherry, 379 So.2d 590 (Ala. 1980).
Civil actions brought after June 11, 1987, are governed by § 12-21-12, Ala. Code 1975, which abolished the "scintilla rule"; that statute now requires proof by substantial evidence in order to submit an issue of fact to the trier of the facts. In ruling on a motion for a JNOV, the trial court is called upon to determine whether the evidence was sufficient to submit a question of fact to the jury; for the court to determine that it was, there must have been "substantial evidence" before the jury to create a question of fact. See, § 12-21-12(a), Ala. Code 1975. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
We have carefully reviewed the record in this case and the parties' briefs, and based on our review, we hold that fair-minded persons in the exercise of impartial judgment could reasonably have inferred that the language on the indorsement side of the draft was a mutual release, and that it was in full settlement of the claim. Applying our settled rules of review, we hold that American has not shown us that the verdict was "plainly and palpably wrong and unjust." Christiansen,567 So.2d at 1341. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.